1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   PAULA ANDERSON,                          CASE NO. CV F 05-1325 LJO GSA

12                    Plaintiff,              **ORDER ON DEFENDANT'S MOTION
                                             FOR SUMMARY JUDGMENT, OR IN THE**
13           vs.                             **ALTERNATIVE, PARTIAL SUMMARY
                                             JUDGMENT**
14   FRESNO COUNTY HUMAN
     SERVICES SYSTEM,
15
                     Defendant.
16   _____/

17          By notice filed on September 28, 2007, defendant Fresno County Human Services System moved

18   for summary judgment or in the alternative, partial summary judgment pursuant to Fed.R.Civ.P 56.

19   Plaintiff Paula Anderson filed an opposition on November 6, 2007. Defendants filed a reply on

20   November 20, 2007. Pursuant to Local Rule 78-230(h), this matter is submitted on the pleadings without

21   oral argument.  Therefore, the hearing was vacated.  Having considered the moving, opposition, and

22   reply papers, as well as the Court's file, the Court issues the following order.

23                    **FACTUAL AN PROCEDURAL BACKGROUND**

24          Plaintiff, a former employee of the County, filed the instant lawsuit against the County in the

25   Federal District Court of California for the Central District on November 10, 2004. (Joint Scheduling

26   Report at 2:6-7.)  The case was transferred to this Court on October 21, 2005.  Plaintiff alleges that the

27   County violated Title VII of the Civil Rights Act of 1964, as amended, during her employment by

28   subjecting her "to different terms, conditions and privileges of employment than similarly situated

1

1  employees outside of her protected group" and by treating her "less favorably than non-

2  African-American employees in the terms, conditions and privileges of employment." (See generally

3  Complaint; Joint Scheduling Report at 2:8-11 and 6:3-4.)  The complaint does not clearly identify the

4  claims.   Rather, plaintiff alleges a series of events taking place during her employment from

5  approximately January 2002 until June 2004, and suggests – without so alleging – that each occurred

6  because of her race.

7      Plaintiff was employed with the COUNTY from approximately March 6, 2000 until she was

8  terminated for allegedly being absent without leave on January 6, 2005.  On January 7, 2002, Plaintiff

9  was promoted to the position of Health Education Specialist ("HES") with a probationary period of one

10 year.  While on probation, on January 6, 2003, Plaintiff was rejected for a permanent position based on

11 poor work performance as outlined and detailed in several written evaluations of Plaintiff and in a

12 Performance Improvement Plan.   She was returned to her former permanent position as Health

13 Education Assistant ("HEA").  On June 16, 2003, Plaintiff filed her charge of discrimination with the

14 DFEH and EEOC.  Plaintiff went out on medical leave in June 2004. Plaintiff was on an approved

15 medical leave of absence until November 29, 2004, and defendant contends plaintiff was to return to

16 work on November 30, 2004.  On January 6, 2005, an Order for Disciplinary Action was issued and

17 served on Plaintiff informing her that her employment with the County had been terminated effective

18 January 4, 2005 for job abandonment.  Thereafter, plaintiff was terminated.  On December 5, 2005,

19 Plaintiff filed a second charge with the EEOC alleging discrimination.

20                    **ANALYSIS AND DISCUSSION**

21     In her opposition, plaintiff states her claims for relief are for race discrimination (Doc. 61,

22 Opposition p. 15), for racial harassment (Doc. 61, Opposition p.18), and for retaliation (Doc. 61,

23 Opposition, p.19.)

24 **A.     Summary Judgment Standard**

25     On summary judgment, a court must decide whether there is a "genuine issue as to any material

26 fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia*

27 *Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985);

28 *Loeh v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).  The criteria of

1   "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

2   242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the

3   plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient

4   evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S.

5   at 248.

6       "As to materiality, the substantive law will identify which facts are material." *Anderson*, 477

7   U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's

8   case necessarily renders all other facts immaterial," and in such circumstances, summary judgment

9   should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry

10  of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317,

11  322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the

12  court those portions of the material on file that it believes demonstrates the absence of any genuine

13  issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific

14  facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

15  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

16      To establish the existence of a factual dispute, the opposing party need not establish a material

17  issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to

18  require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank*

19  *of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631. The opposing

20  party "must do more than simply show that there is some metaphysical doubt as to the material facts.

21  . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

22  party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). The

23  opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the

24  facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255;

25  *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

26      "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

27  fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

28  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of

3

1   summary judgment, after adequate time for discovery and upon motion, against a party who fails to make

2   the showing sufficient to establish the existence of an element essential to that party's case, and on

3   which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough

4   evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan*

5   *Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence

6   necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

7   parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting

8   *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere

9   existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*,

10  477 U.S. at 252, 106 S.Ct. 2505.

11  **B.   Arguments Attacking the Form or Timing of the Administrative Charges**

12  Defendant makes three arguments that seek to restrict the wrongful conduct plaintiff may pursue

13  at trial: (1) only conduct described in the administrative complaint is actionable, (2) plaintiff failed to

14  exhaust administrative remedies, and (3) the claims are administratively time-barred.

15  **1.   Conduct Not Described in the Administrative Charge is Not Actionable**

16  Defendant argues that plaintiff is precluded from pursuing claims that are not described in the

17  DFEH and the EEOC administrative charges.

18  Before bringing a civil action under Title VII, a plaintiff must file a timely administrative charge

19  with the EEOC and receive a right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1). The civil action is limited

20  to acts of discrimination reasonably related to the allegations in the administrative charge or new acts

21  occurring during the pendency of the charge before the administrative body. *Oubichon v. North*

22  *American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973); *Okoli v. Lockheed Technical Operations*

23  *Co.*, 36 Cal.App 4th 1607, 1617 (1995).

24  Plaintiff filed two separate charges of alleged discrimination. On June 16, 2003, plaintiff filed

25  a complaint with the California Department of Fair Employment and Housing ("First EEOC/DFEH

26  Charge"). (Doc. 50, Littlewood Decl, Exh. "N.") The DFEH complaint states, in relevant part, that

27  plaintiff was denied permanent status/promotion: "I believe that I was denied permanent status as a

28  Health Education Specialist because of my race (African-American)." *Id.* Plaintiff then filed the second

4

charge of discrimination with the EEOC/DFEH on December 5, 2005 ("Second EEOC/DFEH Charge"). (Doc. 50, Littlewood Decl, Exh. "P.") This Second EEOC/DFEH Charge alleged that plaintiff was discharged on January 6, 2005, for which plaintiff "believe[d] [she] had been discriminated against because of [her] race (Black), in violation of the Americans with Disabilities Act of 1990, as amended, and in retaliation for engaging in protected activity." *Id.* Thus, each of the two charges filed with the administrative agencies charged specific conduct.

In her opposition, plaintiff challenges purported discrimination in various terms and conditions of her employment. Plaintiff appears to challenge each and every employment decision made during her employment as discriminatory - employment reviews (see Amended Anderson Decl. ¶¶22, 31), lack of training (*Id.* at ¶¶27, 39), reprimands (*Id.* at ¶21), timing of performance evaluations (*Id.* at ¶33), sending emails (*Id.* at ¶40), misspellings (*Id.* at ¶43). Indeed, plaintiff categorizes her evidence as "different terms and conditions" related to "Training," "Performance Evaluations," and "Reprimands, Probation (delay in Salary Increase) Salary Reduction and Demotion." (Doc. 61, Opposition p.1-14.) Plaintiff's argument and evidence challenge a broad spectrum of terms and conditions of her employment as discriminatory.

None of these terms and conditions of employment wase raised in either administrative charge. The civil action is limited to acts of discrimination reasonably related to the allegations of the administrative charge or new acts occurring during the pendency of the charge before the administrative body. *Ouibchon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973). When an employee brings suit for incidents not listed in his prior EEOC charge, a federal court may hear the new . . . claims if they are 'like or reasonably related to the allegations of the EEOC charge.'" *Stache v. International Union of Bricklayers and Allied Craftsmen, AFL-CIO*, 852 F.2d 1231, 1234 (9th Cir. 1988) (quoting *Brown v. Puget Sound Elec. App. & Train, Trust*, 732 F.2d 726, 729 (9th Cir. 1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784 (1985)). "But if the two claims are not so closely related that a second administrative investigation would be redundant, the EEOC must be allowed to investigate the dispute before the employee may bring a . . . suit." *Stache*, 852 F.2d at 1234. The crucial element is the factual statement contained on the administrative charge, rather than the type of discrimination alleged by the check-the-box selection, which constitutes a mere technical defect. *Id.* (adopting a like or

1  reasonably related" standard of whether the 'scope' of the DFEH investigation which can reasonably be

2  expected to grow out of the charge of discrimination.);  *Shah v. Mt. Zion Hospital and Medical Center,*

3  642 F.2d 268, 271 (9th Cir. 1981) (Shah filed an EEOC complaint alleging sex and national origin

4  discrimination. At trial Shah attempted to expand his Title VII action to include race, color and religious

5  discrimination. The district court lacked subject matter jurisdiction over these additional claims because

6  Shah failed to raise them before the EEOC. )

7      Plaintiff does not argue how any of these routine employment actions are reasonably related to

8  the acts of discriminatory probation/demotion and termination charged in her two EEOC/DFEH

9  administrative charges. The purpose of the administrative charge alleging discrimination is to trigger

10 administrative investigatory and conciliatory procedures. *Sandhu v. Lockheed Missiles & Space Co.*,

11 26 Cal.App.4th 846, 858, 31 Cal.Rptr. 2d 617 (1994).  The limited scope of the two EEOC/DFEH

12 administrative charges do not remotely encompass the broad spectrum of alleged discriminatory conduct

13 now raised by plaintiff as to her terms and conditions of employment.  Thus, the discriminatory conduct

14 in plaintiff's terms and conditions of employment was not exhausted at the administrative level.[1]

15      **2.    Failure to Exhaust on Claims of Racial Harassment**

16      Neither EEOC/DFEH Charge alleged racial harassment.  As shown above, the First EEOC/DFEH

17 Charge filed by plaintiff alleged only discrimination in promotion/demotion: "I believe that I was denied

18 permanent status as a Health Education Specialist because of my race (African-American)."  (Doc. 50,

19 Littlewood Decl., Exh. "N.")  The First EEOC/DFEH Charge did not allege racial harassment.

20      Likewise, the Second EEOC/DFEH Charge did not allege racial harassment.  The Second

21 EEOC/DFEH Charge alleged that plaintiff was discharged on January 6, 2005, for which plaintiff

22 "believe[d] [she] had been discriminated against because of [her] race (Black), in violation of the

---

[1]    Issues may be summarily adjudicated within a claim.  Upon a showing that there is no genuine issue of material fact as to particular claims(s) or defenses(s), the court may grant summary judgment in the party's favor "upon all or any part thereof."  Fed.R.Civ.P. 56(a); *Wright v. Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591, 594 (D.C.Ga. 1982) (Plaintiff asserted that the defendants violated three sections of a statute; the court treated each alleged violation as a separate claim.) "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others."  *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990) (same).  Thus, the Court views each act of discrimination as a separate claim.

6

1  Americans with Disabilities Act of 1990, as amended, and in retaliation for engaging in protected

2  activity."

3  Accordingly, claims for racial harassment were not administratively exhausted in the First

4  EEOC/DFEH Charge and in the Second EEOC/DFEH charge.  Accordingly, summary adjudication will

5  be granted for claims of racial harassment.

6  **3.  Alleged Retaliation Claim in the Second DFEH/EEOC Charge is Time-barred**

7  Plaintiff's Second EEOC/DFEH Charge on December 5, 2005 included additional claims for (1)

8  retaliation for filing the First EEOC/DFEH Charge, and (2) disability discrimination.[2]  (Doc. 50, Decl.

9  Littlewood Exh. P.)  Defendant argues that plaintiff's complaint and supplemental discovery responses

10  do not identify any unlawful conduct taking place within the 300 days before December 5, 2005.[3]

11  Title VII bars a plaintiff's discrimination claim unless the plaintiff files a charge of discrimination

12  with the Equal Employment Opportunity Commission within 180 days after the alleged unlawful

13  employment practice occurs, or with a state agency having authority to seek relief from unlawful

14  employment practices within 300 days after the alleged unlawful employment practice occurs. 42 U.S.C.

15  § 2000e-5(e)(1).  Title VII establishes two potential time limitations periods within which a plaintiff

16  must file an administrative charge with the EEOC.  See 42 U.S.C. § 2000e-5(e)(1); *MacDonald v. Grace*

17  *Church Seattle*, 457 F.3d 1079, 1081-1082 (9th Cir. 2006). Generally, a Title VII plaintiff must file an

18  administrative charge with the EEOC within 180 days of the last act of discrimination.  *Id.* However,

19  the limitations period is extended to 300 days if the plaintiff first institutes proceedings with a "State or

20  local agency with authority to grant or seek relief from such practice." *Id.* Under Title VII, state agencies

21  are authorized to investigate and enforce Title VII claims pursuant to "work sharing agreements" with

22  the Equal Employment Opportunity Commission ("EEOC").  42 U.S.C. §2000e-8(b); 29 C.F.R.

23  §1626.10( c).  Charges filed with either the EEOC or the DFEH are deemed "constructively filed" with

24

25  [2] Plaintiff does not mention or argue in her opposition that she is claiming disability discrimination in this action. Therefore, the Court finds that disability discrimination, while alleged in the Second EEOC/DFEH Charge, is not before this Court.

26

27  [3] Plaintiff identified in verified written discovery responses the following three protected activities in support of her "retaliation" claim: (1) the filing of a discrimination claim with the DFEH in June 2003; (2) the filing of a worker's compensation appeal on July 7, 2003; and (3) her receipt of a right-to-sue letter from the DFEH on May 25, 2004. (Doc. 50, Littlewood Decl. Exh. L, p.21.)

28

1   the other. 29 CFR §1626.10( c); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175-76 (9th Cir.

2   1999).

3                    **(a) The 300 Day Limitations Period is Applicable**

4           The Court finds that the applicable limitations period is 300 days of the last act of discrimination,

5   not 180 days as argued by defendant.  The DFEH and the EEOC have a work share agreement.  *See*

6   *E.E.O.C. v. Dinuba Medical Clinic*, 222 F.3d 580, 585 (9th Cir. 2000) (Constructive filing is made

7   possible by "worksharing agreements," which designate the EEOC and the state agency each other's

8   agents for the purpose of receiving charges).  The Second Charge was filed with both the DFEH and with

9   the EEOC.  (Doc. 50, Littlewood Decl. Exh. P ("I want this charge filed with both the EEOC and the

10  State or local Agency, if any."))   Accordingly, the longer limitations time of 300 days applies to this

11  case.

12          Title VII precludes recovery for discrete acts of discrimination or retaliation that occur outside

13  the statutory time period.  "A discrete retaliatory or discriminatory act 'occurred' on the day that it

14  'happened.'" *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2061 (2002)

15  (addressing claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e,

16  et seq.).  In *Morgan*, 536 U.S. at 113, 122 S.Ct. 2061, the United States Supreme Court further

17  explained:

18          "First, discrete discriminatory acts are not actionable if time barred, even when they are
            related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a
19          new clock for filing charges alleging that act. . . . The existence of past acts and the
            employee's prior knowledge of their occurrence, however, does not bar employees from
20          filing charges about related discrete acts so long as the acts are independently
            discriminatory and charges addressing those acts are themselves timely filed."
21

22  According to the Supreme Court, easily identifiable discrete acts include "termination, failure to

23  promote, denial of transfer or refusal to hire." *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061. "Each incident

24  of discrimination and each retaliatory adverse employment decision constitutes a separate actionable

25  'unlawful employment practice.'" *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061; *see infra*, footnote 1.

26

27

28

                                                    8

**(b) Acts occurring more than 300 Days before the filing of the Pre-complaint Questionnaire are time-barred**

Plaintiff submits evidence that she completed an EEOC questionnaire and had it time-stamped on October 31, 2005. (Anderson Decl. ¶¶83-84.) Although not stated by plaintiff, the Court assumes plaintiff is arguing that the date of the Second EEOC/DFEH Charge, December 5, 2005, should relate back to the pre-complaint questionnaire date of October 31, 2005. Plaintiff did not cite any authority that the formal charge may relate back to the pre-complaint questionnaire.

The Court's research discloses that the date of filing the administrative complaint may relate back to the date of the pre-complaint questionnaire. In *Casavantes v. California State University, Sacramento*, 732 F.2d 1441 (9th Cir.1984), the Court held that the filing of an intake questionnaire was sufficient to serve as the filing of a charge when it gives the EEOC sufficient information to identify the parties and to describe the practices challenged. *Compare Rodriguez v. Airborne Express*, 265 F.3d 890, 894 (9th Cir. 2001) (plaintiff left blank all questions pertaining to the discrimination he allegedly suffered.)

In plaintiff's case, the questionnaire sets out sufficient information to satisfy *Casavantes v. California State University, Sacramento*. It sets out the parties, plaintiff and the County, and the alleged discriminatory practices of termination for racial discrimination, disability discrimination and retaliation. Accordingly, the Court deems the Second EEOC/DFEH Charge filed on October 31, 2005.

Thus, any claim of retaliation that occurred prior to the date which marks 300 days before the Second EEOC/DFEH Charge was deemed filed is time-barred. The Court grants summary judgment in favor of the defendant on all claims that arose before 300 days before the Second EEOC/DFEH Charge was deemed filed.[4]

**4.   Acts Occurring More than 300 Days before the <u>First</u> EEOC/DFEH Charge are Also Time-barred**

Here, plaintiff filed her First EEOC/DFEH Charge on June 16, 2003. For the same reasons discussed, *infra*, events more than 300 days before June 16, 2003 are not timely. No act occurring before

---

[4] The Court calculates 300 days from October 31, 2005 as January 4, 2005.

August 21, 2002 can constituted retaliation or discrimination.   Plaintiff failed to exhaust her administrative remedy as to such acts.   The Court grants summary judgment in favor of the defendant on all claims that arose before 300 days before the First EEOC/DFEH Charge was filed.

**C.    Plaintiff's Complaint does not Include A Claim for Discriminatory Termination**

Plaintiff filed her complaint on November 10, 2004 in the Central District of California.   The action was transferred to this Court on October 21, 2005.  Since the initial filing of the Complaint, the Complaint has not been amended.

Defendant argues that the allegations of the complaint before this Court do not include a claim for racial discrimination in plaintiff's termination.   Defendant states that plaintiff alos has failed to include in her discovery responses any claim for race discrimination in her termination.

The Ninth Circuit has upheld refusal to permit unpled issues to proceed to trial. In *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291 (9th Cir. 2000), *cert. denied*, *Gentile v. Quaker Oats Co.*, 533 U.S. 950 (2001), the plaintiff could not avoid summary judgment by asserting a theory not plead or made known to defendant during discovery because permitting unpled theory 'would prejudice the defendant'. In *Coleman,* the district court was not required to allow the employees to proceed on disparate impact claims at summary judgment stage where they had stated disparate treatment claims in their complaints but had failed to plead disparate impact claims or to make known during discovery their intention to proceed on disparate impact theory at summary judgment stage.   A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.  *Coleman v. Quaker Oats Co.*, 232 F.3d at 1292.

The complaint in this case does not include any claim for discriminatory termination. From the Court's review of plaintiff's complaint, plaintiff does not allege any wrongful conduct after August 11, 2004. The allegations of wrongful conduct stop with the last act of August 11, 2004.  Plaintiff, however, was terminated in January 2005.  Her termination is not alleged in the complaint.  Plaintiff never moved to amend its complaint with a theory of liability for termination.  Thus, the complaint does not allege termination.

In addition, from the Court's review of plaintiff's written discovery responses submitted as evidence by defendant, plaintiff did not state discriminatory termination was a basis of her claims. (Doc.

50, Littlewood Decl, Exh. L.)  In defendant's propounded interrogatories, plaintiff was asked to state all facts: "that defendant discriminated against you on the basis of your race," "that defendant harassed you during your employment," "that defendant retaliated against you during your employment," "that race was a motivating factor" in the terms and conditions of her employment.  (Doc. 50, Littlewood Decl, Exh. L, Interrogatory 3, 5, 7, 9 .)  None of her discovery responses indicates any wrongful conduct after June 16, 2004.  None of her discovery responses indicate that she claimed discriminatory termination. Plaintiff's discovery responses are a litany of events starting in 2001 and continuing to June 16, 2004. The termination is not mentioned.  Discovery ended months ago; the trial is only two months away. Allowing new theories of liability at this late stage of litigation would prejudice defendants. Accordingly, as plaintiff's January 2005 termination is not plead in the complaint and was not the subject of discovery responses, it is not properly before this Court. Accordingly, summary adjudication on plaintiff's claim for termination/racial discrimination is granted.

**D.**      **Racial Discrimination in Promotion/Demotion**

      **1.**      **Burden of Proof on *Prima Facie* Case**

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race . . ." 42 U.S.C. §2000e et seq.  A plaintiff may show violation of Title VII by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment.  *Sischo-Nownejah v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991).

A plaintiff may establish a prima facie case of discrimination by introducing evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094 (1981); *Sischo-Nownejah*, 934 F.2d at 1109. The evidence may be either direct or circumstantial, and the amount that must be produced to create a prima facie case is "very little." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Sischo-Nownejah*, 934 F.2d at 1110-1111.

A plaintiff can make out a prima facie case for failure to promote under Title VII by showing: 1) she belongs to a protected minority; 2) she applied for and was qualified for the position that she was denied; 3) she was rejected despite her qualifications; and 4) the employer filled the position with an

1 employee not of plaintiff's class, or continued to consider other applicants whose qualifications were

2 comparable to plaintiff's after rejecting plaintiff. *McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct.

3 at 1824 (to establish a prima facie case of discrimination, a plaintiff must show, inter alia, that he applied

4 and was qualified for a job the employer was trying to fill); *Lindahl v. Air France,* 930 F.2d 1434, 1437

5 (9th Cir. 1991) (that she belongs to a protected group, that she applied and was qualified for a job which

6 was open for applications, that she was rejected, and that the position remained open after her rejection

7 and the employer continued to seek applicants from persons of the plaintiff's qualifications.)

8            **2.        Elements of the Prima Facie Case Which Are Not Met**

9            County does not dispute that plaintiff meets the first and third elements of the prima facie case.

10 (Doc. 44, Moving papers p.17.) Defendant, however, argues that plaintiff cannot meet the second

11 element, that she was qualified for the HES position.  Defendant also argues that plaintiff cannot meet

12 the fourth element, that the employer filled the position with an employee not of plaintiff's class, or

13 continued to consider other applicants.

14            The second element of the prima facie case requires plaintiff to show that she was qualified for

15 the position.  Plaintiff was promoted to the position of Health Education Specialist (HES) in January

16 2002 and demoted in January 2003.  (Doc. 62, Amended Anderson Decl. ¶ 12, 42.)

17            Inexplicitly, plaintiff fails to introduce any evidence of her qualifications for the position.

18 Plaintiff's discovery responses state she received "accolades" for some functions she coordinated in

19 2002. (Doc. 50, Littlewood Decl. Exh L, p.3.)  Plaintiff's other evidence  explains how she was not

20 trained, did not have "templates", was inexperienced, was reprimanded, etc. Nowhere in her declaration

21 or in her discovery responses does she explain her qualifications for the position and how she was

22 qualified to continue performing the HES position.  Indeed, plaintiff does not dispute defendant's

23 undisputed fact which states:

24            "Plaintiff can adduce no competent and objectively verifiable evidence
             of her qualifications for the HES position."  (Doc. 71-1, Defendant's
25            Compendium Stated of Undisputed Material Facts, Fact 31.)

26 Plaintiff did not dispute this fact.  (See Doc. 64, Plaintiff's Statement of Disputed Facts, Fact 31.)

27

28

1  Plaintiff did not present any contrary evidence.[5]  *Id.*

2          In addition, plaintiff's opposition fails to argue that plaintiff was qualified for the position.  The

3  opposition merely concludes that, "she was qualified for the position."  (Doc. 61, Opposition p.15-16.)

4  She does not provide any factual support for the conclusion that she was qualified for the position.  Thus,

5  there is no evidence before the Court that plaintiff was qualified to perform the HES position.

6          Likewise, plaintiff does not provide any evidence on the fourth element of the *prima facie* case.

7  The fourth element requires that plaintiff raise a triable issue of fact that other employees similarly

8  situated to her passed probation or that the HES position was held open while defendant continued to

9  seek applications.

10         There is simply no evidence before the Court as to what occurred after she was demoted from

11  the HES position. There is no evidence whether defendant filled the position with an employee not of

12  plaintiff's class.  There is no evidence whether defendant continued to consider other applicants whose

13  qualifications were comparable to plaintiff's after rejecting plaintiff. Indeed, plaintiff did not submit any

14  evidence to support defendant's undisputed fact that she has no evidence of who replaced her:

15              "Plaintiff has no evidence that other similarly situated employees of a
                different race passed probation for the HES position.  Because she does
16              not even know who made the decision to rejecting [sic] her on probation,
                plaintiff has no evidence that race was a motivating factor in the decision
17              to reject her on probations for the HES position."   (Doc. 77-1,
                Compendium of Statement of Undisputed Facts, Fact 30.)
18

19  Plaintiff did not submit any evidence that the County kept the HES position open:

20              "Plaintiff has no evidence that the COUNTY kept her HES position open
                and sought applications from people with similar qualifications as her."
21              (Doc. 77-1, Compendium of Statement of Undisputed Facts, Fact 32.)

22  Plaintiff did not submit any evidence that could remotely infer facts on the fourth element of the *prima*

23  *facie* case.  As there is no evidence from which a reasonable jury could infer that plaintiff met her *prima*

24  *facie* burden, summary judgment on this claim is appropriate.  The Court, therefore address the

25  remaining shifting burdens in the *McDonnell Douglas* test.

26

27  _____

28         [5]  The Court has no duty to search the record.  *Guarino v. Brookfield Township Trustee*, 980 F.2d 399, 402 (6th Cir.
    1992); *accord Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

1

**<u>CONCLUSION</u>**

2

   For the foregoing reasons, the Court GRANTS the motion for summary judgment.  The Clerk

3

of the Court is directed to close the case.

4

IT IS SO ORDERED.

5

**Dated:   <u>November 29, 2007</u>**     <u>/s/ Lawrence J. O'Neill</u>
             UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28